

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INSURANCE COMPANY OF
NORTH AMERICA,

     **Plaintiff/Counter-Defendant,**

v.                          **Case No. 8:03-CV-385-T-23EAJ**

JORGE L. CUELLAR,

     **Defendant/Counter-Plaintiff/**
     **Third-Party Plaintiff,**

WISELEY MARINE INS., a
division of WALLACE, WELCH &
WILLINGHAM, INC.,

     **Third-Party Defendant.**
_____/

### REPORT AND RECOMMENDATION

Before this court are **Defendant/Counterplaintiff's Motion for Final Summary Judgment in Regards to Plaintiff/Counterdefendant's Declaratory Action (Dispositive Motion) and Memorandum of Law in Support Thereof** (Dkt. 41), Plaintiff's response in opposition (Dkt. 49), **Defendant/Counterplaintiff's Dispositive Motion for Partial Summary Judgment Regarding Plaintiff/Counterdefendant's Breach of Contract in its Failure to Pay a Loss Payee and for Coverage Under Declaratory Judgment Action as to Loss Payee's Interest** (Dkt. 61),

and Plaintiff's response in opposition (Dkt. 69).[1]  Oral argument
has been held.

## I.  **FACTUAL BACKGROUND**

Plaintiff/Counter-Defendant Insurance Company of North America
("ICNA") is a corporation incorporated under the laws of the State
of Pennsylvania having its principal place of business in a State
other than the State of Florida. Defendant/Counter-Plaintiff Jorge
L. Cuellar ("Cuellar") is a citizen of the State of Florida and is
the named insured under a yachtsman policy of marine insurance
bearing the number YKR Y07148653 ("policy") issued by ICNA.  The
policy named First Union National Bank ("First Union") as the "loss
payee."[2]

On or about August 31, 2002, Cuellar signed an Application for
Yacht Insurance for a 2000 34' Proline, HIN PLCSR011F000, with

---

[1] These motions have been referred to the undersigned by the
district court for consideration and a Report and Recommendation.
See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

[2] More specifically, the policy stated in relevant part:

> LOSS PAYEE: We will make payments for Part A:
> Property Damage losses to the Assured and
>
> FIRST UNION NATIONAL BANK
> PO BOX 50010
> ROANOKE, VA 24022

(Dkt. 1, Exhibit B)

three (3) Mercury 225 h.p. outboard engines ("vessel"). The application also named First Union in the loss payee section.[3]

Prior to applying for insurance, Cuellar also signed a promissory note with First Union for the purchase of the vessel. This agreement required Cuellar to obtain insurance, and First Union was to receive the proceeds of any insurance to the extent of the debt owed to First Union.

Thereafter, on November 6, 2002, the vessel was reported stolen. As a result of the alleged theft, Cuellar made a claim with ICNA seeking to recover under the policy.

ICNA acknowledged receipt of Cuellar's claim and investigated the reported theft of the vessel as evidenced by ICNA's December 6, 2002, letter. (Dkt. 1, Exhibit C) By letter dated January 7, 2003, ICNA advised Cuellar of its reservation of rights and continued investigating the reported loss. (Dkt. 1, Exhibit D)

Under the heading "General Conditions and Exclusions," the policy provides in part:

> CONCEALMENT, MISREPRESENTATION OR FRAUD: All coverage provided by us will be voided from the beginning of the Policy Period if you **intentionally** conceal or misrepresent any material fact or circumstance relating to this contract of insurance, or the application for such insurance, whether before or after a loss.

---

[3] The loss payee section merely contained the hand-written name and address for First Union. (Dkt. 1, Exhibit B)

3

(Emphasis added)    The application further provides (back of the
first page):

> I UNDERSTAND THAT THE INFORMATION ON THIS
> APPLICATION WHICH IS CORRECT AND COMPLETE **TO
> THE BEST OF MY KNOWLEDGE**, IS TO BE THE BASIS
> OF INSURANCE, IF GRANTED, BUT DOES NOT
> OBLIGATE ME TO ACCEPT THE INSURANCE NOR THE
> COMPANY TO ACCEPT THE RISK.

(Emphasis added)    The paragraph immediately following states in
part:

> Any person who **knowingly and with intent to
> defraud** any insurance company or other person
> files an application for insurance containing
> any false information, or conceals for the
> purpose of misleading, information concerning
> any fact material thereto commits a fraudulent
> insurance act, which is a crime.

(Emphasis added)

After completing its investigation, on March 3, 2003, ICNA
filed its complaint for declaratory judgment (Dkt. 1) against
Cuellar seeking to obtain a declaration of ICNA's rights and/or
obligations regarding coverage under the terms of the marine
insurance policy which ICNA seeks to void for alleged
misrepresentations made in the application.    The complaint was
filed under this court's admiralty and diversity jurisdiction.    The
matter is ripe for declaratory relief as Cuellar's claim under the
policy as a result of the alleged theft of the vessel and personal
property aboard the vessel creates an actual controversy that is
definite, substantial, and complete.

Specifically, ICNA requests that the court (1) declare that the insurance policy is deemed void from its inception and does not provide coverage for Cuellar's claim under the federal maritime doctrine of *uberrimae fidei*; (2) declare that ICNA is not liable to Cuellar for his claim under the policy; (3) declare that ICNA has no liability to Cuellar pursuant to the policy; and (4) enter a final judgment against Cuellar for such other relief as this court deems just and proper.

Subsequently, Cuellar filed an amended counterclaim for declaratory judgment and breach of contract. (Dkt. 18) In Count I, Cuellar seeks declaratory judgment and requests that the court (1) declare that under the doctrines of waiver and estoppel, any alleged misrepresentations in the application have been waived and that ICNA is estopped as a matter of law from asserting such defense to void the policy; (2) declare that ICNA has liability under the policy and that the policy was in full force and effect on November 6, 2002; (3) declare that the parties have "contracted out of" and "contracted around" federal maritime law and that the language of the policy requires the insurer to prove an "intentional" misrepresentation; (4) award Cuellar reasonable fees and costs; and (5) enter final declaratory judgment against ICNA for such other relief as the court deems just and proper. In Count II, Cuellar sues for breach of contract and seeks damages.

On August 28, 2003, Cuellar moved for final summary judgment in regards to ICNA's declaratory action. (Dkt. 41) In November 2003, Cuellar also filed a motion for partial summary judgment regarding ICNA's alleged breach of contract for its failure to pay a loss payee and for coverage under the declaratory judgment action as to the loss payee's interest. (Dkt. 61) ICNA has filed responses in opposition. (Dkts. 49 and 69)

## II. **SUMMARY JUDGMENT STANDARD**

Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. Rule 56(c), Fed. R. Civ. P.; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Clark v. Coats & Clark, Inc., 926 F.2d 604, 608-09 (11th Cir. 1991). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Haves v. City of Miami, 52 F.3d 918, 921 (citations omitted.)

## III. **DISCUSSION**

### A. **Cuellar's Motion for Final Summary Judgment Regarding ICNA's Declaratory Action**

To determine the rights and/or obligations of the parties, a threshold issue is which legal standard should be applied in an action seeking to void a policy of marine insurance for alleged misrepresentations made in the application.

In the Eleventh Circuit, it is well-settled that the marine insurance doctrine of *uberrimae fidei* is a firmly entrenched doctrine that controls even in the face of contrary state authority. <u>HIH Marine Services, Inc. v. Fraser</u>, 211 F.3d 1359, 1362 (11th Cir. 2000) (citations omitted); <u>Steelmet, Inc. v. Caribe Towing Corp.</u>, 747 F.2d 689, 695 (11th Cir. 1984); <u>Northfield Ins. Co. v. Barlow</u>, 983 F. Supp. 1376, 1379 (N.D. Fla. 1997). This doctrine requires the utmost good faith and voluntary disclosure by the insured of any material information material to the claim. <u>Id.</u> at 1362-63. Further, under *uberrimae fidei*, any omission to communicate a material fact which the insured is under an obligation to disclose will vitiate the policy whether the omission is intentional or results from mistake, accident, or forgetfulness. <u>Id.</u>

Notwithstanding the foregoing, the Eleventh Circuit has held that parties to a maritime insurance contract are "free to 'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such a contract." <u>King v. Allstate Ins. Co.</u>, 906 F.2d 1537 (11th Cir. 1990). <u>See also</u> <u>William Penn Life Ins. Co. of N.Y. v. Sands</u>, 912 F.2d 1359, 1363-64 (11th Cir. 1990); <u>Barlow</u>, 983 F. Supp. at 1379; <u>Int'l Ship Repair and Marine Servs., Inc. v. St. Paul Fire and Marine Ins.</u>, 922 F. Supp. 577, 581 (M.D. Fla. 1996).

Cuellar's motion for final summary judgment regarding ICNA's declaratory judgment action relies primarily on the Eleventh Circuit's holding in the _King_ case and contends that the marine insurance contract in this case is not subject to the doctrine of _uberrimae fidei_ because three provisions in the contract evidence that only an intentional misrepresentation will void the contract or justify a denial of coverage. Thus, Cuellar submits that because ICNA relies erroneously on the doctrine of _uberrimae fidei_ in asserting its rights under the marine insurance contract, summary judgment should be entered in his favor in regards to ICNA's complaint for declaratory judgment.[4]

In response, ICNA argues that the policy language does not render the doctrine of _uberrimae fidei_ inapplicable in this case and suggests that the decision of the Eleventh Circuit in the _King_ case frustrates the national interests of uniformity under federal maritime law and was wrongly decided or is not controlling.

In support of this argument, ICNA cites the _Barlow_ decision and argues that like the clause in that case, the policy language in the instant case serves to reinforce rather than preempt the _uberrimae fidei_ doctrine.

---

[4] Cuellar also argues that the state law standard is inapplicable because the parties to the policy contracted around the basic state requirement regarding misrepresentations by adding the element of intent into the contract. However, as the court finds that the parties set their own standard by contract, it is unnecessary for the court to address this argument concerning the state law standard.

In the case *sub judice*, the policy reads in pertinent part:

> CONCEALMENT, MISREPRESENTATION OR FRAUD: All
> coverage provided by us will be voided from
> the beginning of the Policy Period if you
> **intentionally** conceal or misrepresent any
> material fact or circumstance relating to this
> contract of insurance, or the application for
> such insurance, whether before or after a
> loss.

(Dkt. 1, Exhibit B) (Emphasis added)  The application also contains

two other provision relevant to the issue of intent:

> I UNDERSTAND THAT THE INFORMATION ON THIS
> APPLICATION WHICH IS CORRECT AND COMPLETE **TO
> THE BEST OF MY KNOWLEDGE**, IS TO BE THE BASIS
> OF INSURANCE, IF GRANTED, BUT DOES NOT
> OBLIGATE ME TO ACCEPT THE INSURANCE NOR THE
> COMPANY TO ACCEPT THE RISK.
>
> . . .
>
> Any person who **knowingly and with intent to
> defraud** any insurance company or other person
> files an application for insurance containing
> any false information, or conceals for the
> purpose of misleading, information concerning
> any fact material thereto commits a fraudulent
> insurance act, which is a crime.

(Dkt. 1, Exhibit A) (Emphasis added)

Under the facts and circumstances presented, the court finds

the <u>King</u> case particularly instructive.

In <u>King</u>, the marine insurance policy contained a provision

stating that "[t]his policy is void if you **intentionally** conceal or

misrepresent any material fact or circumstance, before or after a

loss . . . ." <u>Id.</u> at 1539 (emphasis added).  The court interpreted

this provision to mean that **the parties** contracted out of federal

9

maritime law and concluded that although there was a clear nexus to admiralty law, the parties contracted for their own standard to show misrepresentation or omission. Id. at 1540-42. Reasoning that there is no public policy problem in allowing parties to a maritime insurance contract to set the terms of the policy between them, the Eleventh Circuit recognized that maritime law does not necessarily apply in all cases involving maritime insurance and upheld the legal right of the parties in a maritime insurance policy to contract for their own standard. Id. at 1541.

Similar to the provision in King, the policy language in the instant case clearly demonstrates that the parties contracted out of the *uberrimae fidei* doctrine in favor of a standard requiring intentional concealment or misrepresentation of any material fact. In comparing the policy clause at issue with that in King, it is apparent that both clauses require intent to void the policy.[5]

ICNA's reliance on the Barlow decision is misplaced as the policy language in Barlow is distinguishable from that in the instant case.

In Barlow, the court found that the parties did not contract around *uberrimae fidei* because there was no language (express or

---

[5] Although ICNA attempts to distinguish King from the present case by pointing out that in King the policy stated "is void" whereas in the instant dispute, the policy states that coverage "will be voided" for intentional misrepresentation or concealment of any material fact or circumstance, this distinction is unpersuasive.

10

implied) in the policy which indicated an intent to contract around the obligations of *uberrimae fidei* in favor of a standard requiring intent.[6]  983 F. Supp. at 1380.  Of note, the language in <u>Barlow</u> provided that "any misrepresentation" will render the policy void whereas in the instant case and the <u>King</u> case, the policy language expressly provides for "intentional" concealment or misrepresentation to render the policy void.  The broad <u>Barlow</u> language requiring "any misrepresentation" supports the doctrine of *uberrimae fidei* in which any material misrepresentation or omission

---

[6] More specifically, the marine insurance application in the <u>Barlow</u> case stated:

> **Any misrepresentations** in this application for insurance, will render insurance coverage null and void from inception.  Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.

<u>Barlow</u>, 983 F. Supp at 1379-80 (emphasis added).  In addition, the insurance policy contained the following provision:

> 1)  This policy shall be void:--
>
> i)  in the case of fraud on the part of any insured under this policy,
>
> ii)  If at any time any insured conceals or misrepresents any material fact concerning this insurance, the property insured, the insured's interest in the property, the nature of the risk insured or the circumstances of a claim . . .

<u>Id.</u> at 1380.

will vitiate the policy whether intentional or inadvertent. Thus, the court in <u>Barlow</u> concluded that it was appropriate for the court to apply federal maritime law. <u>Id.</u>

Here, the evidence clearly shows that like the parties in <u>King</u>, the parties in this case contracted around *uberrimae fidei* by adding the elements of intent to their contract. Accordingly, in determining the rights and/or obligations of the parties in this case, the appropriate standard to be applied is the standard set forth in the policy which requires intentional misrepresentation.

As the Eleventh Circuit in <u>King</u> recognized the legal right of the parties in a marine insurance contract to "contract out" or "contract around" federal or state law, the court is compelled to uphold their right to do so, especially in light of the strikingly similar provisions. <u>King</u>, 906 F.2d at 1539, 1540.

While the court finds the doctrine of *uberrimae fidei* inapplicable in the instant case, summary judgment on ICNA's declaratory judgment action should be denied because there is a material factual dispute as to whether Cuellar acted intentionally when he allegedly omitted or misrepresented material information. Contrary to Cuellar's assertion that the sole basis for ICNA's

---

[7] Moreover, the insurance application in the instant case further contained the "to the best of my knowledge" type language which has been held to establish applicability of the lesser knowledge standard. <u>See</u> <u>Sands</u>, 912 F.2d 1359; <u>Green v. Life & Health of Am.</u>, 704 So. 2d 1386 (Fla. 1998) (applying this lower standard for judging misrepresentation and rescission where the insurer uses the "knowledge and belief" language).

complaint for declaratory judgment is the applicability of the *uberrimae fidei* doctrine, ICNA also alleged that Cuellar's misrepresentations prevent him from recovering under the policy. Nowhere in its complaint does ICNA allege that Cuellar's alleged misrepresentations were not intentional.

Accordingly, it is recommended that summary judgment regarding ICNA's declaratory judgment action be **DENIED.**

**B. Cuellar's Motion for Partial Summary Judgment Regarding ICNA's Alleged Breach of Contract in its Failure to Pay a Loss Payee and for Coverage Under Declaratory Judgment Action as to Loss Payee's Interest**

The court next addresses whether Cuellar is entitled to partial summary judgment regarding his breach of contract claim against ICNA for its alleged failure to pay First Union, the entity listed as the "loss payee," and for coverage under the declaratory judgment action as to the loss payee's interest.

In making this determination, an initial issue is whether Cuellar has standing to move for entry of judgment on behalf of First Union.

Standing

ICNA argues that Cuellar failed to plead a claim on behalf of First Union and has no standing to bring such a claim. ICNA contends that this motion for partial summary judgment is the first notice to ICNA that Cuellar is making a claim on behalf of First Union. In addition, ICNA asserts that First Union has never demanded payment from ICNA and has never attempted to intervene in

13

this action. At oral argument, ICNA's counsel stated that First Union has sustained no damage because Cuellar has continued to make payments on the loan.

At oral argument, Cuellar argued that pursuant to Rule 17, Fed. R. Civ. P., Cuellar may sue on behalf of First Union as a third-party beneficiary. Also, Cuellar contends that his counterclaim seeks a determination of ICNA's obligations under the terms of the policy, thereby stating a claim on behalf of First Union.

A third-party beneficiary is one who, though not a party to a contract, stands to benefit from the contract's performance. BLACK'S LAW DICTIONARY 149 (7th ed. 1999).

If anyone is a third-party beneficiary, it is First Union, not Cuellar. This argument is therefore without merit. ICNA correctly asserts that Cuellar has not pled a claim on behalf of First Union. The counterclaim fails to even mention the loss payee, First Union.

Indisputably, Cuellar is not entitled to judgment on a claim which he has not asserted and for which he has no standing. Accordingly, the court recommends that Cuellar's motion for partial summary judgment regarding ICNA's breach of contract in its failure to pay First Union and for coverage under the declaratory judgment action as to First Union's interest be denied.

Should this court determine to address the merits of Cuellar's motion, the motion should also be denied for the reasons which follow.

## Loss Payee Clause

Generally, there are two types of loss payable clauses: (1) an open loss payable clause in which the mortgagee is simply an appointee to receive the insurance funds recoverable in case of loss to the extent of his interest, and his right of recovery is no greater than the right of the mortgagor; and (2) the standard or union clause which provides that the mortgagor's acts or neglect will not invalidate the insurance provided that if the mortgagor fails to pay premiums due, the mortgagee shall on demand pay the premiums, and in return for incurring premium liability, the mortgagee is freed from the policy defenses that the insured might have against the mortgagor. Progressive American Ins. Co. v. Fla. Bank at Daytona Beach, 452 So. 2d 42, 44 (Fla. Dist. Ct. App. 1984) (citations omitted). See also 4 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE §§ 65:9, 65:15, 65:24, 65:48 (3d ed. 1997).

The protection afforded by the standard clause requires "some form of language that the insurance with respect to the mortgagee shall not be invalidated by the mortgagor's acts or neglect." Id. at § 65:48.

In the instant case, First Union was merely named as "loss payee." Here, the language stated:

> LOSS PAYEE: We will make payments for Part A: Property Damage losses to the Assured and

> **FIRST UNION NATIONAL BANK**
> PO BOX 50010
> ROANOKE, VA 24022

(Dkt. 1, Exhibit B)

Cuellar argues that although the policy named First Union as the loss payee, it was silent as to the terms and rights of the loss payee for coverage in the event of loss. Thus, by not containing a loss payable clause that identifies the rights of the loss payee, Cuellar argues that the policy is ambiguous and as such, the loss payable clause must be construed as the standard loss payable clause which entitles the loss payee to full coverage, despite any defenses against the insured.

Further, Cuellar contends that due to ambiguities in the policy, the intent expressed in the promissory note between Cuellar and First Union,[8] and by listing First Union as the loss payee and

---

[8] Cuellar's agreement with First Union provides in part:

> INSURANCE: If I have given you a security interest in my property, I agree to keep physical damage insurance covering loss or damage to any collateral for the term of this loan. My insurance must cover any physical damage, including damage caused by flood(s), if you require such coverage. My insurance shall be maintained in the amounts and for the periods that you require. If I fail to maintain adequate coverage as described above,

then remaining silent as to its rights, the policy must be construed as a standard loss payable clause entitling First Union to full coverage as a matter of law, despite Cuellar's alleged misrepresentations. Thus, Cuellar argues that ICNA wrongfully denied coverage and breached the contract by failing to pay First Union, the loss payee.

ICNA responds that the loss payee provision is clearly an open loss payable clause whereby First Union is an appointee to receive insurance funds in case of loss to the extent of its interest, and its right of recovery is no greater than Cuellar's right. Further, ICNA points out that the policy contains absolutely no provision declaring that (1) First Union's interests shall not be invalidated by any act or neglect of Cuellar; or (2) requiring First Union to incur premium liability. Rather than creating ambiguity or doubt

---

> you may, at either your option or as required by law, obtain coverage to protect your rights in accordance with other provisions of this Note. If collateral is lost, damaged or destroyed, I agree that you may use any insurance settlement either to repair the collateral or to apply it to my debt. I agree to assign the proceeds of any insurance to you to the extent of the debt I owe and agree that the insurance company may pay you directly. I agree that you have an irrevocable power of attorney to file proofs of loss and anything else necessary to obtain the insurance proceeds in my name. Loss, damage or destruction of collateral will not release me from any liability under this Note.

(Dkt. 69, Exhibit B)

as Cuellar suggests, ICNA asserts that the absence of such provisions serves to clearly and unambiguously reveal that First Union is a mere appointee of the insurance funds with rights no greater than those of Cuellar.

In further support, ICNA points out that although First Union had the opportunity to require Cuellar to seek the protection afforded by the standard loss payable clause, it failed to request such protection as evidenced by the promissory note between First Union and Cuellar.[9]

Contrary to Cuellar's assertion, there is no ambiguity in the policy language or no doubt as to whether this clause is a standard or open clause.

Rather, by merely naming First Union in the loss payee section but omitting any terms or declaration of rights as to the loss payee,[10] the parties clearly demonstrated their intent to name First Union as a mere appointee of the insurance fund with rights no greater than those of Cuellar.

---

[9] At oral argument, Cuellar filed the deposition of First Union's records custodian in support of its contention that First Union requested a standard loss payable clause. ICNA objects to this evidence as untimely. Whether untimely or not, this evidence is irrelevant because there is no ambiguity justifying consideration of matters outside the contract.

[10] The absence of any provision declaring that First Union's interests shall not be invalidated by any act or neglect of Cuellar or any provision requiring First Union to incur premium liability is especially telling.

Thus, the court finds that First Union is merely a party designated to receive payment to the extent of its loss, if any, should Cuellar prevail on his claim.

Accordingly, it is recommended that Cuellar's motion for partial summary judgment regarding ICNA's breach of contract in its failure to pay First Union and for coverage under the declaratory judgment action as to First Union's interest be **DENIED**.

## IV. CONCLUSION

Accordingly, upon due consideration, it is hereby **RECOMMENDED** that:

(1) Defendant/Counterplaintiff's Motion for Final Summary Judgment in Regards to Plaintiff/Counterdefendant's Declaratory Action (Dispositive Motion) and Memorandum of Law in Support Thereof (Dkt. 41) be **DENIED**; and

(2) Defendant/Counterplaintiff's Dispositive Motion for Partial Summary Judgment Regarding Plaintiff/Counter-defendant's Breach of Contract in its Failure to Pay a

Loss Payee and for Coverage Under Declaratory Judgment
Action as to Loss Payee's Interest (Dkt. 61) be **DENIED**.

ELIZABETH A. JENKINS
United States Magistrate Judge

Date: February 26th, 2004

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings
and recommendations contained in this report within ten (10) days
from the date of this service shall bar an aggrieved party from
attacking the factual findings on appeal. <u>See</u> 28 U.S.C. 636(b)(1).


Copies to:   All Counsel of Record
             District Court Judge

Date Printed: 02/27/2004


Notice sent to:

    ____   Richard J. McAlpin, Esq.
         McAlpin & Brais, P.A.
         Brickell Bayview Centre
         80 S.W. 8th St., Suite 2805
         Miami, FL 33130

         8:03-cv-00385   mrh

    ____   Michael Vincent Laurato, Esq.
         Austin & Laurato
         1902 W. Cass St.
         Tampa, FL 33606

         8:03-cv-00385   mrh

    ____   Lawrence Phillip Ingram, Esq.
         Phelps Dunbar LLP
         100 S. Ashley Dr., Suite 1900
         Tampa, FL 33602-5311

         8:03-cv-00385   mrh

    ____   Jessica E. Kirkwood, Esq.
         Phelps Dunbar LLP
         100 S. Ashley Dr., Suite 1900
         Tampa, FL 33602-5311

         8:03-cv-00385   mrh

    ____   Timothy Peter Shusta, Esq.
         Phelps Dunbar, LLP
         100 S. Ashley Dr., Suite 1900
         Tampa, FL 33602-5311

         8:03-cv-00385   mrh