

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

CASE NO.: 8:03-CV-0385-T-23EAJ

INSURANCE COMPANY OF NORTH
AMERICA,

        Plaintiff/Counter-Defendant,

vs.

JORGE L. CUELLAR,

        Defendant/Counter-Plaintiff,
                            /

**PLAINTIFF, INSURANCE COMPANY OF NORTH AMERICA ("ICNA")'S OBJECTIONS TO MAGISTRAGE JUDGE'S FEBRUARY 26, 2004 REPORT AND RECOMMENDATION ON DEFENDANT/COUNTERPLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT IN REGARDS TO PLAINTIFF/COUNTERDEENDANT'S DECLARATORY ACTION**

Plaintiff/Counter-Defendant, INSURANCE COMPANY OF NORTH AMERICA ("ICNA"), hereby files its Objections to the Magistrate Judge's February 26, 2004 Report and Recommendation on Defendant/Counter-Plaintiff, JORGE L. CUELLAR ("CUELLAR")'s Motion for Final Summary Judgment in Regard to Plaintiff/Counter-Defendant's Declaratory Action ("R&R") with respect to the following portions only:

(1)    The Magistrate Judge's finding at page 4 of the R&R that: "The complaint was filed under this court's...diversity jurisdiction."

(2)    The Magistrate Judge's finding at page 12 of the R&R that "in determining the rights and/or obligations of the parties in this case, the appropriate standard to be applied is the standard set forth in the policy which requires intentional misrepresentation."

(3) The Magistrate Judge's finding at page 10, footnote 5 of the R&R that the distinction between the term "is void" and the term "will be voided" is unpersuasive in distinguishing the policy language in King from the policy language *sub judice*.

(4) The Magistrate Judge's finding at pages 10 and 11 of the R&R that ICNA's reliance on the Barlow decision is misplaced" as the "the language in Barlow provides that 'any misrepresentation will render the policy void...'".

**(1) The Complaint was not filed pursuant to the court's diversity jurisdiction**

At paragraph one, the Complaint alleges:

> 1. This is an action for declaratory relief with respect to a policy of marine insurance and as such is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court retains jurisdiction pursuant to Article III, Section 2 of the United States Constitution and 28 U.S.C. Section 1333.

Nowhere in its Complaint does ICNA assert the Court's diversity jurisdiction under 28 U.S.C. Section 1332.

**(2) Even in the face of contrary state authority, federal maritime law requires that in determining the rights and/or obligations of the parties with respect to misrepresentation and/or concealment in a case involving marine insurance within the admiralty jurisdiction of the federal courts, the appropriate standard to be applied is *uberrimae fidei*, the firmly entrenched doctrine of marine insurance requiring utmost good faith on the part of the insured**

ICNA appreciates that in light of the holding in King v. Allstate Insurance Company, 906 F.2d 1537 (11 Cir. 1990), the Magistrate Judge felt "compelled" to find that "in determining the rights and/or obligations of the parties in this case, the appropriate standard to be applied is the

standard set forth in the policy which requires intentional misrepresentation." R&R at 12. In following King, however, the Magistrate Judge ignored a plethora of similarly binding Eleventh Circuit precedent requiring application of *uberrimae fidei*, the firmly entrenched doctrine of marine insurance requiring utmost good faith on the part of the insured. Unquestionably, the marine insurance doctrine of *uberrimae fidei* is the controlling maritime law in the Eleventh Circuit. *See*, Transamerica Leasing Inc. v. Institute of London Underwriters, Yorkshire Insurance Co. Ltd., 267 F.3d 1303 (11 Cir. 2001); HIH Marine Services, Inc. v. Fraser, 211 F.3d 1359, 1362-63 (11 Cir. 2000); La Reunion Francaise, S.A. v. Christy, 122 F. Supp. 2d 1325, 1330 (M.D. Florida 1999). The Eleventh Circuit regards the doctrine of *uberrimae fidei* as a firmly entrenched federal doctrine and has held, on several occasions, that it is "the controlling federal rule even in the face of contrary authority". International Ship Repair & Marine Services, Inc. v. St. Paul Fire & Marine Ins. Co., 922 F.Supp. 577 (M.D. Florida 1996); La Reunion Francaise, S.A. v. Christy, *supra* at 1330 ("This duty to make full disclosure has been accepted in the Eleventh Circuit as a firmly entrenched precedent.") (citations omitted).

Under federal maritime law, marine insurance policies, demand and are governed by the doctrine of *uberrimae fidei*. "Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law." All Underwriters v. Weisberg, 222 F.3d 1309, 1312 (11 Cir. 2000) *citing* Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 321, 75 S.Ct. 368 (1955). Unique to contracts of marine insurance, the *uberrimae fidei* doctrine is available to void coverage *ab initio*, when the insured fails to communicate a material fact regardless of intent:

> In marine insurance, contrary to the general rule applicable to other kinds of insurance...any omission to communicate a material fact[1] which insured is under an obligation to disclose will vitiate the policy **whether such omission is intentional or results from mistake, accident, forgetfulness or inadvertence; and fraud is not necessary.**

Gulfstream Cargo, Ltd. v. Reliance Ins. Co., 409 F.2d 974, 981 (5 Cir. 1969)[2] *quoting* 45 C.J.S. Insurance Section 645a (emphasis added.) This exception developed because underwriters often have no practicable means of checking on the accuracy or sufficiency of the facts furnished by the applicant for marine insurance before the risk is accepted and the premiums and conditions are set. HIH Marine Services, Inc. v. Fraser, *supra* at 1362 (11 Cir. 2000). By "[p]lacing the burden of good faith on the insured rather than the insurer, with penalties absolving the insurer should there be a misrepresentation, saves the costs of time and investigation which would normally be passed on, at least in part, to the insured." Northfield Insurance Co. v. Barlow, 983 F.Supp. 1376, 1383 (N.D. Fla. 1997).

In finding that the parties herein had contract-out or contracted-around the *uberrimae fidei* doctrine, the Magistrate Judge relied on that section of the King opinion which states that "parties are free to 'contract-out' or 'contract around' state or federal law with regard to an insurance contract, so long as there is nothing void as to public policy or statutory law about such contract". R&R at 7. ICNA respectfully submits that when as in this case, the contract is one of marine insurance, courts must also consider whether such "freedom to contract" will infringe upon the great national interests of uniformity under federal maritime law. Recognizing that long-standing admiralty principles should not be sacrificed for the sake of protecting state's

---

[1] Under the doctrine of *uberrimae fidei*, materiality is defined as "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk". Northfield Insurance Co. v. Barlow, 983 F.Supp. 1376, 1383 (N.D. Fla. 1997).

rights, long ago, the Supreme Court held: state law must yield if it "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law..." In re Amtrack "Sunset Limited" Train Crash, 121 F.3d 1421, 1426 (11 Cir. 1997) quoting Southern Pacific Co. v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 529 (1917). "That substantive admiralty law rights are being threatened...is a critical factor in considering the relative weight of federal maritime interests." In re Amtrack "Sunset Limited" Train Crash, *supra*, citing Pope & Talbot V. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 204-05 (1953) (admiralty's comparative negligence rule barred application of state contributory negligence rule); Kossick v. United Fruit Co., 365 U.S. 731, 742, 81 S.Ct. 886, 893 (1961) (federal maritime rule validating oral contracts precluded application of state Statute of Frauds); Garrett v. Moore-McCormack Co., 317 U.S. 239, 248-49, 63 S.Ct. 246, 252-53 (1942) (federal maritime rule allocating burden of proof displaced conflicting state rule).

Although King may have been correctly decided under Louisiana law, application of maritime law *sub judice*, requires a different result. Tried before a jury, the action in King must have been brought under diversity jurisdiction rather than admiralty and maritime jurisdiction under Rule 9(h). It is well established that state substantive law normally controls when an insurance contract dispute is brought in federal court under diversity jurisdiction. *See* Allstate Insurance Co. v. Stanley, 282 F.Supp.2d 1342, 1343 (M.D. Fla. 2003). However, "where [as here] federal admiralty law is firmly entrenched, maritime insurance suits invoke a choice of laws analysis separate and distinct from other types of insurance disputes." Northfield Insurance Co. v. Barlow, *supra*, 983 F.Supp. 1376, 1379 n.2; *See*, All Underwriters v. Weisberg, *supra*,

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11 Cir. 1981) (en banc), the court adopted as binding precedent all decisions rendered by the former Fifth Circuit prior to October 1, 1981).

222 F.3d at 1313 (since there is no specific and controlling federal rule of law relating to attorney's fees in maritime insurance litigation, state law governs the issue of whether or not attorney's fees lie in the context of a marine insurance dispute). Therefore, to appropriately decide whether maritime law applies on a particular issue, a court must first determine if there exists an established federal maritime policy addressing the specific issue. In All Underwriters, *supra*, the Eleventh Circuit explained the required analysis as follows:

> Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law. See *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321, 75 S. Ct. 368, 99 L. Ed. 337 (1955)[3]; *New England Mut. Marine Ins. Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 33-34, 20 L. Ed. 90 (1870); *Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n*, 896 F.2d 495, 498-99 (11th Cir.1990); *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 428 n. 4 (5th Cir.1980). "But, when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." *Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co., Inc.*, 207 F.3d 1247, 1251 (11th Cir.2000); see also *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222-23, 106 S. Ct. 2485, 91 L. Ed. 2d 174 (1986) ("The extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-Erie' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards."); *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir.1986) ("One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and, if there is no such admiralty principle, consideration must be given to whether such an admiralty rule should be fashioned. If none is to be fashioned, the state rule should be followed.").

All Underwriters, *supra* at 1312.

Finding a mere "nexus to admiralty or maritime law", and holding that "maritime law is not applicable", the Eleventh Circuit in King failed to recognize that the firmly entrenched

maritime doctrine of *uberrimae fidei* required application of the reverse-*Erie* analysis, in which "generic contract law" upholding parties' freedom to contract, must yield to the needs of a uniform federal maritime law.[4]

**(3)    Although similar, the policy language in *King* is distinguishable from the policy language *sub judice***

At page 10, footnote 5 of the R&R, the Magistrate Judge found that the distinction between the term "is void" and the term "will be voided" is unpersuasive in distinguishing the policy language in King from the policy language *sub judice*. The policy language in King stated:

> "This policy **is void** if you intentionally conceal or misrepresent any material fact or circumstance, before or after a loss..." (emphasis added").

The language in the Policy *sub judice* provides:

> "All coverage provided by us **will be voided** from the beginning of the Policy period if you intentionally conceal or misrepresent any material fact or circumstance relating to this contract of insurance, or the application for such insurance, whether before or after a loss." (emphasis added).

The difference between void and will be voided is that "[s]omething which is void is void *ab initio*[5], whereas something that is voidable is not void until an action is taken to void it." Florida Marble Polishers Health and Welfare Trust Fund v. Megahee, 1979 U.S. Dist. LEXIS 13040 (M.D. Fla. 1979). This distinction is significant for purposes of giving effect to the Policy language without trampling upon firmly entrenched federal maritime law. As suggested by the

---

[3] In Wilburn Boat Co. v. Fireman's Fund Ins. Co., *supra*, the Supreme Court carved out an exception to state law application where federal admiralty law is firmly entrenched.

[4] Similar considerations apply in cases involving valid contractual forum selection clauses where the parties' freedom to contract must yield to unfair inconvenience and interests of justice. See Contravens, Inc. v. McDonnell Douglas Corporation, 889 F.Supp. 470 (M.D. Fla. 1995).

dissenting Judge in <u>King</u>, this could be accomplished by "reading the debated clause to provide for avoidance based on intentional misrepresentations occurring any time after the policy takes effect or even after a loss has occurred while implicitly retaining the [*uberrimae fidei*] standard with regard to misrepresentations made in the course of applying for the policy". The construction suggested by the dissenting Judge in <u>King</u>, works even better when applied to the language of the Policy *sub judice*.

**(4)  The policy language in the *Barlow* decision requires "fraud" to void the policy**

In Northfield Insurance Co. v. Barlow, *supra*, 983 F.Supp. 1376, Plaintiff, Northfield Insurance, brought an action invoking both maritime and diversity jurisdiction seeking to have the marine insurance policy issued to Barlow, on his 58' vessel, void *ab initio* due to material misrepresentations on the insurance application. Barlow, as CUELLAR does here, argued that as a result of the language in the policy, the parties had contracted-out or contracted around the principles of *uberrimae fidei*. The pertinent clauses in the insurance application and policy completed by and issued to Barlow, provided:

> 2. Any misrepresentation in this application for insurance, will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.
>
> 1) This policy shall be void:-
> I) In the case of **fraud** on the part of any insured under this policy,
> ii) If at any time any insured conceals or misrepresents any material fact concerning this insurance, the property insured, the insured's interest in the property, the nature of the risk insured or the circumstances of a claim...

---

[5] *Under uberrimae fidei, a material misrepresentation or omission in the application for insurance voids the policy ab initio, regardless of intent.*

*Id* at 1380 (emphasis added). Although the clause in the application did not require intentional misrepresentation to void the policy, the policy language itself required "fraud". Notwithstanding the policy's standard requiring "fraud", the Northern District of Florida engaged in a thorough analysis of controlling precedent, including King v. Allstate, and issued a well thought out and reasoned opinion, giving effect to the terms of the parties' contract without encroaching upon established federal maritime policy.

After acknowledging that *uberrimae fidei* has been "accepted in the Eleventh Circuit as firmly entrenched precedent, controlling even in the face of contrary state authority" and completing the required choice of law 'reverse-Erie' doctrine analysis, the Northern District concluded that the parties had <u>not</u> contracted around the principles of *uberrimae fidei* stating:

> In comparing the...policy clauses above with the doctrine of uberrimae fidei, it is apparent that those clauses only serve to reinforce the principles of the doctrine rather than preempt them. **There is no language, express or implied, in the policy which indicates an intent to contract around the obligations of uberrima fidei.** For theses reasons, it is appropriate for the court to apply federal maritime law.... Because the doctrine of uberrima fidei is firmly entrenched in federal maritime law in the Eleventh Circuit, the Court finds that it is the controlling law in this case. It is well settled in this circuit that where a doctrine is firmly entrenched in admiralty, federal law will control even in the face of contrary state authority.

*Id.* at 1380, 1384 (emphasis added).

## Conclusion

Adherence to established Eleventh Circuit precedent requires recognition that the entrenched federal marine doctrine of *uberrimae fidei* is the controlling maritime law in the Eleventh Circuit even in the case of contrary state authority. By concluding that "maritime law [was] not applicable" and applying state or "generic contract law", <u>King</u> overlooks established

federal maritime policy addressing the specific issue of *uberrimae fidei* and frustrates the great national interests of uniformity under admiralty law. Application of the appropriate choice of law analysis, requires a finding that maritime law applies to this dispute involving a policy of marine insurance and a conclusion that like the policy clause in Barlow, the Policy clause *sub judice* serves to reinforce rather than preempt the doctrine of *uberrimae fidei*.

ICNA respectfully requests that this Court reverse those portions of the R&R set forth herein and find that in determining the rights and/or obligations of the parties in this case, the appropriate standard to be applied is the firmly entrenched maritime doctrine of *uberrimae fidei*.

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy a true and correct copy of the foregoing was mailed to: MICHAEL VINCENT LAURATO, ESQ., Austin & Laurato, 1902 W. Cass Street, Tampa, Florida 33606 and LAWRENCE P. INGRAM, Phelps Dunbar LLP, 100 South Ashley Drive, Suite 1900, Tampa, Florida 33602 on this _11_ day of March, 2004.

**RESPECTFULLY SUBMITTED.**
McALPIN & BRAIS, P.A.
Brickell BayView Centre
80 S.W. 8th Street, Suite 2805
Miami, Florida 33130
Telephone: 305-810-5400
Facsimile: 305-810-5401

By: _____
M. EMELINA MEJER-KONDLA
Florida Bar No.: 0717207